IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BC TECHNICAL, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ENSIL INTERNATIONAL CORP., a New York corporation, and ENSIL CANADA, LTD., a Canadian corporation<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br>Case No. 2:02-CV-700 TS |

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment.[1]  The Court heard oral argument on October 2, 2007.  For the reasons discussed below, summary judgment is granted in part and denied in part.

I.  PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Defendant Ensil International on July 22, 2002 alleging breach of contract and conversion.  In that Complaint, Plaintiff named "Ensil International, Inc., a Canadian corporation" as Defendant.  Plaintiff filed an Amended Complaint

---

[1]Docket No. 127.

1

on January 16, 2003, in which Defendant's name was changed to "Ensil International Corp., a New York corporation"("Ensil International").  Plaintiff filed a Second Amended Complaint on March 29, 2004, adding "Ensil International Inc., a Canadian corporation" ("Ensil Canada") as an additional Defendant.  Plaintiff also added three additional claims: breach of contract and negligence against Ensil Canada and negligence against Ensil International.  Plaintiff filed a Third Amended Complaint on April 29, 2004 naming "Ensil International Corp., a New York corporation" and "Ensil Canada Limited, a Canadian corporation" as Defendants.  The negligence claim against Ensil International was not included in this Third Amended Complaint, therefore four claims remain: (1) breach of contract against Ensil International; (2) breach of contract (third-party beneficiary) against Ensil Canada; (3) negligence against Ensil Canada; and (4) conversion.  Plaintiff does not specify whether the conversion claim lies against Ensil International or Ensil Canada in the Amended Complaint.  However, based on the subsequent briefs, the Court reads the Third Amended Complaint to allege conversion against both Ensil International and Ensil Canada.

     Plaintiff filed a Motion for Leave to File a Fourth Amended Complaint on August 1, 2007 and that Motion was denied on September 13, 2007.  That Motion sought to add claims relating to alter ego theory.

     Defendants seek partial summary judgment with respect to Claims 2 - 4 from the Third Amended Complaint as listed above.

II. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

III. STATEMENT OF THE FACTS

BC Technical was formed in December 1995 as a servicer of nuclear medical imaging devices and peripheral devices specializing in devices manufactured by ADAC Laboratories.

Ensil International is a privately-held New York corporation with its principal place of business in Lewiston, New York. Ensil Canada is a privately-held Canadian corporation with its principal place of business in Markham, Ontario, Canada.[5] Farsad Kiani has an interest in both Ensil entities.

On May 1, 1998, Ensil International and Ensil Canada entered into a Repair and Sale Agreement ("the Agreement") under which Ensil International may ask Ensil Canada to perform

---

[2] *See* Fed. R. Civ. P. 56(c).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[5] While BC Technical agrees that Ensil International is a privately-held New York corporation and Ensil Canada is a privately-held Canadian corporation, BC Technical asserts that the Ensil International office in New York is little more than a mail drop for Ensil Canada.

repair work.  Ensil International solicits repair business, receives items to be repaired and ships them to Ensil Canada for the actual repair work as provided for under the terms of the Agreement.

BC Technical serviced certain items of equipment that employed two types of circuit boards, ACP boards and MPU boards.  Prior to 2001-2002, BC Technical could not repair those types of circuit boards in-house.

In response to a flyer from Ensil International, BC Technical contracted with Ensil International for the repair of 28 circuit boards.

Sometime after May 1, 2001, BC Technical shipped the boards to Ensil International and prepaid $15,000 in repair charges.

Ensil International forwarded the boards to Ensil Canada for the actual repair work pursuant to the terms of the Agreement.  Beginning on May 18, 2001, the boards were shipped back and forth between Ensil Canada, Ensil International and BC Technical in an ongoing attempt to complete the repairs.

In May 2002, BC Technical requested the return of the remaining circuit boards.  They were returned in December 2005.

BC Technical filed this lawsuit on July 22, 2002.  As previously noted, the first complaint named only Ensil International, a Canadian corporation as Defendant.  As this case has proceeded and the relationship of Ensil International and Ensil Canada has come to light, amended complaints have been filed amending the name of the corporation and adding Ensil Canada as Defendant.  The claims have also evolved to implicate Ensil Canada.

IV. DISCUSSION

Defendant moves for summary judgment on Claims 2 - 4.  Claim 2 alleges breach of contract by Ensil Canada based on third-party beneficiary status.  Claim 3 alleges negligence by Ensil Canada.  Claim 4 alleges conversion.

**A.      Conflict of Law**

Plaintiff mentioned in its brief the question of applicable law in this case.  Defendants made no reference to applicable law, but rested their case almost entirely on Utah law.  At oral argument during the motion for summary judgment hearing, both parties stipulated that Utah law is the controlling authority in this case.

**B.      Third Party Beneficiary**

Plaintiff argues that they are entitled to third party beneficiary status under the Agreement between Ensil International and Ensil Canada.  Thus, contractual remedies against both Ensil International and Ensil Canada would be available to Plaintiff.

"Third party beneficiaries are persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration."[6]  A third party has enforceable rights under a contract when "the intention of the contracting parties to confer a separate and distinct benefit upon the third party" is clear.[7]

---

[6] *SME Industries, Inc. v. Thompson, Ventulett, Stainback and Assoc., Inc.*, 2001 UT 54, ¶47, 28 P.3d 669 (internal quotations omitted).

[7] *Id.*

5

### 1.      *Separate and Distinct Benefits*

In *American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.*,[8] the Utah Supreme Court examined third-party beneficiaries in the context of construction contracts. A condominium association ("the Association") sued the complex's mechanical subcontractor, alleging that the Association was the third-party beneficiary of the contract between the owner and the contractor. In denying third-party beneficiary status to the Association, the Court recognized that "it is not enough that the parties to the contract know, expect or even intend that others will benefit" from the contract.[9] Those seeking third-party beneficiary status must demonstrate that the contract was undertaken for their "direct benefit and the contract itself must affirmatively make this intention clear."[10] While the owner and contractor both knew that eventually the units in the condominium would be sold and the purchasers would benefit from the mechanical work performed, the contract for the work did not confer third-party beneficiary status on the subsequent purchasers because "[t]he intent of the contracting parties to confer a separate and distinct benefit must be clear."[11]

Plaintiff argues that they are the intended third-party beneficiary of the Agreement between Ensil International and Ensil Canada. Thus, Plaintiff argues it is entitled to assert claims for breach of contract, negligence and conversion against Ensil Canada. Defendants argue that the Agreement between Ensil International and Ensil Canada did not confer a separate and

---

[8] 930 P.2d 1182 (Utah 1996).

[9] *Id*. at 1188.

[10] *Id*.

[11] *Id*. (quoting *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1386 (Utah 1989)).

distinct benefit on Plaintiff and that BC Technical was merely an incidental beneficiary of the Agreement.

The Court finds that the Agreement between Ensil International and Ensil Canada did not confer third-party beneficiary status upon Plaintiff. The Agreement was undertaken several years before BC Technical and Ensil International contracted for the repair of the circuit boards. The Agreement allowed Ensil International to solicit repair business in the United States without having to maintain and staff a repair facility, thus conferring a benefit on Ensil International. As in *American Towers*, the fact that Plaintiff was to benefit from the performance of the Agreement does not automatically confer third-party beneficiary status. Plaintiff does not demonstrate that the Agreement was undertaken for its direct benefit. Moreover, the Agreement itself does not make clear a separate and distinct benefit to Plaintiff. Therefore, Plaintiff is not a third-party beneficiary of the Agreement.

### 2.     *Indemnity Clause*

Plaintiff further argues that the indemnity clause of the Agreement gives rise to third-party liability, citing *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist*[12] in support. Defendant addresses the indemnity clause in its Reply Memorandum and argues that because the clause does not mention Plaintiff and was for the direct benefit of Ensil International only, third-party liability is improper.[13]

In *Ron Case*, a subcontractor sued claiming third-party beneficiary status based on a settlement agreement entered into by the developer and the general contractor regarding several

---

[12] 773 P.2d 1382 (Utah 1989).

[13] Def.s' Reply Mem. in Supp. of Mot. for Partial Summ. J. at 4 (Docket No. 174).

of the developer's projects ("the Vesper projects").  The court first determined that the settlement agreement was plain and unambiguous.[14]  The court then found that third-party beneficiary status rested solely on language specifically related to indebtedness related to the Vesper projects and not on a general indemnification and hold harmless provision included in the agreement.[15]  The court held that "one who assumes a debtor's obligations creates enforceable third-party beneficiary rights in the debtor's creditors," while "usual indemnity language alone" does not support third-party liability.[16]

> In this case, the Agreement also contains an indemnification clause stating that
>
> Ensil Canada agrees to indemnify and hold Ensil International harmless against any liability, damage or expense (including costs and attorney's fees and expenses) by reason, or arising out of or relating to any acts, duties or obligations or omissions of Ensil Canada or of any personnel employed or otherwise engaged by Ensil Canada to perform Ensil Canada's obligations, and duties under this Agreement, and Ensil Canada shall, at the request of Ensil International, assume the defence of any demand, claim, action, suit or proceeding brought against Ensil International by reason thereof[.][17]

The Court finds that the indemnity clause in the Agreement between Ensil International and Ensil Canada does not give rise to third-party beneficiary status for Plaintiff.  The Agreement is plain and unambiguous on its face.  The Agreement was executed long before Plaintiff came in contact with Defendant.  The indemnification clause in *Ron Case* was specifically entered into because of problems that arose with the Vesper projects and was drafted with an eye towards

---

[14] *Ron Case*, 773 P.2d. at 1386.

[15] *Id.* at 1387.

[16] *Id.*

[17] Def.s' Mem. in Supp. of Mot. for Partial Summ. J., Ex. A at 6 (Docket No. 128-2).

8

those projects. Here, the clause did not anticipate liability involving Plaintiff with enough specificity for this Court to find third-party liability.

In sum, the Agreement between Ensil International and Ensil Canada did not confer third-party beneficiary status on Plaintiff. Plaintiff could only rely on the contract between Ensil International and Plaintiff in raising a contract cause of action and Plaintiff may not bring contract claims against Ensil Canada. Therefore, summary judgment on Claim 2 is granted in favor of Defendants.

**C.      Economic Loss Rule**

Defendants next argue that a negligence claim against Ensil Canada is improper because the economic loss rule would bar recovery in this case.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[18] Under the economic loss rule, "economic damages are not recoverable in negligence absent physical property damage or bodily injury."[19] In cases involving contract and tort liability questions, the economic loss rule does not apply to tort claims that are "based on a recognized independent duty of care."[20] The economic loss rule developed in the context of products liability or construction and design cases.[21] However, the

---

[18] *SME Industries, Inc. v. Thompson, Ventulett, Stainback and Assoc., Inc.*, 2001 UT 54, ¶32, 28 P.3d 669.

[19] *Id.*

[20] *Hermansen v. Tasulis*, 2002 UT 52, ¶17, 48 P.3d 235.

[21] *West v. Inter-Financial, Inc.*, 2006 UT App 222, ¶8, 139 P.3d 1059.

Utah Supreme Court has recognized other commercial settings in which application of the economic loss rule is appropriate.[22]

Defendants argue that the economic loss rule bars Plaintiff's negligence claim because Plaintiff asserts no duties outside the contractual obligations between Ensil International and Plaintiff. Plaintiff argues that a negligence claim against Ensil Canada is proper precisely because there was no contract between Ensil Canada and Plaintiff and thus Plaintiff only has tort remedies available.

The Court finds that summary judgment in favor of Defendants on this claim is appropriate. To avoid the economic loss rule, it is not enough for Plaintiff to show that it has no remedy in contract against Ensil Canada. In order to prevail on a negligence claim against Ensil Canada, Plaintiff must demonstrate a recognized independent duty of care.[23] Plaintiff fails to do so. Accordingly, Plaintiff has not established that the economic loss rule does not bar the negligence claim against Ensil Canada. Therefore, summary judgment on Plaintiff's negligence claim against Ensil Canada is granted.

**D.     Conversion**

In the Third Amended Complaint, Plaintiff does not distinguish between Ensil Canada and Ensil International in its conversion claim. As previously discussed, the Ensil International-Plaintiff and Ensil Canada-Plaintiff relationships are different, thus the Court considers conversion with respect to each Defendant separately.

---

[22]*Id*. at ¶10 (finding that the purpose behind the economic loss rule was "to prevent disproportionate liability and to allow parties to allocate risk by contract.").

[23]*Hermansen,* 2002 UT 52, ¶16 (citing *Grynberg v. Agric. Tech. Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)).

"Conversion is an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession."[24]

Plaintiff contends that its boards were kept, either by Ensil Canada or Ensil International, for more than three years, long after Plaintiff requested their return. Defendants do not dispute that the boards were not returned to Plaintiff, however, they contend that the boards were in possession of Ensil International, not Ensil Canada, and that summary judgment in favor of Ensil Canada is appropriate on this issue. They do not argue summary judgment in favor of Ensil International.

Based on the Defendants' statement of the facts, which Plaintiff does not dispute,[25] Ensil Canada returned the boards to Ensil International shortly after Plaintiff requested their return. Ensil International did not return the boards to Plaintiff for more than three years. Since Ensil Canada had given up possession of the boards when requested, a claim for conversion against Ensil Canada must fail.

Defendant further argues that Ensil Canada could not have converted funds because the $15,000 pre-payment for the repair was proper. However, the Court reads Plaintiff's brief as arguing conversion of the boards, rather than of funds. The Court finds that Plaintiff's conversion claim against Ensil Canada must fail but that a genuine issue of material fact remains with respect to Ensil International. Therefore, summary judgment on the conversion claim is granted with respect to Ensil Canada and denied with respect to Ensil International.

---

[24]*Bennett v. Huish*, 155 P.3d 917, 928, 2007 UT App 19, ¶31.

[25]DUCivR 56-1(c) ("All material facts . . . that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party[.]")

11

### E.     Alter Ego, Quasi-Implied Warranty, Trespass to Chattels and Aiding and Abetting

Plaintiff advances several new theories in their Memorandum in Opposition based on facts revealed during discovery. First, Plaintiff asserts an alter ego theory for finding Ensil Canada liable. Plaintiff maintains that discovery revealed the true nature of the Ensil International/Ensil Canada relationship and that they are so closely linked that they are alter ego. Plaintiff points to the fact that both are owned by the same man, Farsad Kiani, the Agreement is signed by only him, as representative of both companies, and that business correspondence did not make it clear that Ensil Canada and Ensil International were separate entities. Plaintiff's Motion to file a Fourth Amended Complaint[26] in which Ensil Canada was characterized for the first time as the alter ego of Ensil International was denied.[27]

Plaintiff argues that Ensil Canada is liable for quasi-implied warranty, trespass to chattels and aiding and abetting. Defendant argues in its Reply Brief[28] that because those theories were not properly pleaded, Plaintiff cannot assert them now.

The Federal Rules of Civil Procedure require "a short, plain statement of the claim showing that the pleader is entitled to relief."[29] While pleadings may be amended in the interest

---

[26] Docket No. 176.

[27] Docket No. 182.

[28] Docket No. 174.

[29] Utah R. Civ. P 8(a)(2).

of justice, the adverse party must be given opportunity to meet the amendment.[30] The Court recognizes the importance of granting motions to amend in the interest of justice.[31]

This action is based on the Third Amended Complaint filed on April 29, 2004.[32] The Complaint only asserts breach of contract, negligence and conversion claims and does not assert alter ego, quasi-implied warranty or aiding and abetting claims. Defendants filed the instant motion based on that Third Complaint.

The Court granted three motions to amend over the course of this litigation and Plaintiff must stand on their Third Amended Complaint, in which the new causes of action are not pleaded. Thus, the Court declines to address these issues. In any case, this does not bear on the motion for summary judgment as Defendants only move for summary judgment on Claims 2 - 4 of the Third Amended Complaint.

**F.     Damages**

Defendants have withdrawn their motion for summary judgment on Plaintiff's damages claim.[33] Therefore, the Court makes no ruling on damages at this time.

V. CONCLUSION

---

[30]Utah R. Civ. P. 15(b), *see also Thomas J. Peck & Sone, Inc. v. Lee Rock Products*, 515 p.2d 446, 450 (Utah 1973) ("recognizing the desirability of the pleadings setting forth definitely framed issues, but also of permitting amendment where the interest of justice so requires, and the adverse party is given fair opportunity to meet it.").

[31]*Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶39, 87 P.3d 734 (where denial of a motion to amend that was filed in response to a motion for summary judgment requires consideration of several factors).

[32]Docket No. 59.

[33]Def.'s Mem. in Supp. of Mot. for Partial Summ. J. at 12 (Docket No. 174).

The Court finds that summary judgment is proper in this case with respect to Defendant Ensil Canada on Claim 2, breach of contract based on third-party beneficiary status, Claim 3, negligence and Claim 4, conversion.

Additionally, the Court finds summary judgment improper with respect to Claim 4, conversion against Defendant Ensil International.  It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 127) be GRANTED in part and DENIED in part.

DATED   October 3, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge